[No. 21555. *En Banc.* November 30, 1928.]

# H. O. FISHBACK, *Respondent*, v. BOTHELL BUS COMPANY, *Appellant*.[1]

[1]Reported in 272 Pac. 67.

50

*Wright & Catlett,* for appellant.
*John A. Homer,* for respondent.

Mitchell, J.—The Automobile Insurance Exchange of Seattle was organized in 1919 as an inter-insurance association under the insurance code of 1911, particularly the fifth paragraph of § 86, ch. 49, Laws of 1911, p. 226 which was re-enacted in Laws of 1915, p. 309, § 1, ch. 108, being Rem. Comp. Stat., § 7131. Thereafter it operated successfully until January 1, 1923, after which date its liabilities and losses increasingly

exceeded its income until December 29, 1926, when, in an action instituted by the *Attorney General,* in the name of the insurance commissioner of the state, the superior court ordered the insurance commissioner to take possession of all the property, records and effects of the exchange for the purpose of liquidation.

The insurance commissioner designated F. T. Houghton as special deputy insurance commissioner to act in settling the affairs of the exchange. Upon taking charge, the deputy insurance commissioner, hereinafter spoken of as the department, collected a small amount of claims due the exchange, and upon proper notice to creditors a large number of claims were presented which, upon a hearing in court, were allowed in the approximate amount of $108,000. Besides this amount there were claims of subscribers for unearned premiums in the sum of $20,016.75.

An assessment on the members was necessary. In order to arrive at a basis on which to levy assessments, the department divided the policy holders into forty-eight classes, that is, one class for each month of the four years during which the exchange was operated at a loss. The earned income from premiums and some nominal sources for each month was then compared with the losses and liabilities incurred and accruing during that month, and a computation made by which the losses exceeded the income for each monthly period, to which was added ten per cent for administration expenses.

In this way and upon this basis, the proper assessment against each member was arrived at. Thus, for example: On a policy issued in January, 1923, and running for one year, the premium would be divided into twelve equal parts, because one-twelfth of the premium was earned each month that the policy was in force; then, the liabilities accruing in the respective

months that such policy was in effect would be charged to the respective months, and the differences between these two would give the amount of loss above income, from which was computed the percentage of loss, and the assessment of each policy holder during that time would be determined upon that basis plus ten per cent for expenses. Upon this basis and by order of the superior court, the department ratably levied an assessment upon all subscribers to the exchange who held policies at any time during the four years losses occurred.

Notice of the levy was sent to the subscribers. To the defendant Bothell Bus Company, three policies, for one year each, had been issued by the exchange on the following dates, June 24, 1922, January 14, 1925, and January 14, 1926. The defendant refused to pay the assessments against it in the sum of $476.66, whereupon this action was commenced, which resulted in a judgment in that amount against it. The judgment further provided that there may be further assessments and recovery against the defendant, if necessary to effect payment of all liabilities and expenses. The defendant has appealed.

The fifth paragraph of Rem. Comp. Stat., § 7131, particularly applicable here, portions of which we italicize, is as follows:

"If it is formed to transact business as inter-insurers only between the parties forming the company and all parties who shall become members and inter-insurers therein, no such company shall be formed nor transact any business as insurers until not less than twenty-five persons or parties, each of whom must be worth in his or its own right not less than twenty thousand dollars above all liabilities, in property located within this state, such fact to be determined by the commissioner, and in determining the same he may take the verified statement of such parties, and

the signed reports of a reputable commercial agency having upward of one hundred thousand subscribers, which person or parties shall first prescribe and adopt the terms and conditions upon which they will be governed and become inter-insurers each with the other, *and each shall be individually liable with every other solvent member of such company to ratably pay and discharge all losses and legal claim accruing against such company; Provided, that the terms and conditions prescribed, adopted and entered into by such persons in becoming inter-insurers shall embrace the terms and conditions which experience of similar companies has found to be efficient and adequate to promptly and equitably pay and discharge its obligations of which the commissioner shall be the judge:* Provided, further, that the provisions of this paragraph shall only apply to inter-insurers associations hereafter organized or hereafter applying for admission and authority to transact business in this state as inter-insurers.''

The case calls for a construction of the statute in fixing the basis or method to be used for levying assessments against policy holders and members of the Automobile Insurance Exchange, to provide funds to pay losses and liabilities which have been proven and established against it by proper proceedings, together with the expenses of administering the insolvent association.

■ The appellant contends the assessment was levied on a fundamentally wrong basis for five reasons. (1) In that it was based upon the premiums earned, and not on the liability assumed by the by-laws of the association and the authority given by the appellant upon becoming a member of the exchange. The exchange was organized under the insurance code, and each member upon going into it designated as its agent a person, common to all, who transacted the business of the exchange at its office.

Different kinds of insurance policies were issued on forms adopted by the exchange, such as fire, theft and transportation; full coverage collision; property damage; liability, one person; liability, one accident. A member might take a policy covering one or more of the different kinds of insurance, while as to liability insurance, covering injuries to persons, it was fixed in alternative amounts limiting liability on account of injury to one person or death at $5,000, and limiting liability on account of one accident involving more than one person to $10,000. The limits might be increased to $10,000 for one person and $20,000 for one accident, or other amounts as desired, while in the case of public carriers, such as the appellant, the amounts would be determined by the seating capacity of the stage, as fixed by the statute law, ranging from $5,000 to $20,000, or still further increased beyond the statutory limit for the stage operator's own protection.

Policies were issued on three classes of automobiles, to wit, private automobiles, commercial automobiles, which consisted of commercial trucks, and passenger carriers, including stages and for hire automobiles. These different kinds of insurance, even in a given amount, were effected at different rates or premiums. One, upon becoming a member of the exchange, executed and delivered an instrument called "Authority from the Subscribers", upon the back of which the by-laws of the automobile exchange were printed. The by-law principally relied on by the appellant is as follows:

"Whenever any loss or losses occur, the same shall be apportioned against each subscriber who is a guarantor upon the policy or policies issued to the sufferer by fire or casualty of any kind, in such proportionate sum as the amount of liability carried by each sub-

scriber upon the policy or policies is to the total amount guaranteed by all the subscribers on such policy or policies of insurance covering such loss or losses.''

The provision on the face of the "Authority from the Subscribers" relied on by the appellant is as follows:

''That no contract shall be made in our behalf which binds us jointly, it being expressly understood and agreed that the liability of each subscriber to the exchange shall be several and not joint, and the liability of each subscriber shall in no case exceed such proportionate sum as the amount of liability carried by each subscriber upon the policy, or policies and/or bonds, is to the total amount guaranteed by all the subscribers on such policy, or policies of insurance and/or bonds, covering such loss or losses.''

The department, with its long experience in such matters, was unable to give the provisions of the two instruments any practical effective application in making the assessments. The trial court expressed the same view. Certainly in none of the writings executed by any of the parties, is anything to be found which fixes the amount of the liability that each policy holder assumes with respect to the particular policy under which loss may fall, or the method by which the liability is to be determined.

To distribute a loss, as appellant argues, upon other members according to so-called liabilities or equally upon the members numerically, would be wholly uncertain as to the first and illogical and unfair as to the second, where the members liable hold policies at different rates or premiums and some of which policies provide for liability in the alternative. The exchange did not have, nor was it required to have, any reserve, so that its assets to meet losses and liabilities were derived almost exclusively from the premiums it re-

ceived, and the record shows that, during the four years it operated successfully, it met its losses out of a fund created by premiums received on policies issued, which in our opinion is the only practical method upon which to levy assessments under the statute which charges the members of the company to ratably pay the losses and claims.

■ That the basis for the assessment was wrong, in that it included losses under policies issued before the appellant became a member.

As we understand the assignment and argument, it is that it was wrong to include in the assessment a loss occasioned in a given month earlier than the date of appellant's policy issued in that same month. Policies were issued at all times of each month and losses occurred in the same way. In the plan of the department, if a policy for a year was issued on January 15, 1925, it was assessed for the twelve monthly periods of that calendar year, so that if a loss occurred in January, 1925, prior to the 15th day of the month, the holder of the policy dated January 15 was assessed, but was not assessed for a loss occurring in any part of January, 1926.

Technically speaking, appellant's argument appears to be sound. But the statute must be given a practical meaning. The testimony in this case shows, without any contradiction whatever, that a vast amount of time has been necessarily spent by the department, with all its knowledge and experience in such matters, in working the matter out on the plan adopted. It also further shows that the technical plan suggested by appellant of a day to day period, rather than monthly periods, where there are altogether thousands of outstanding policies dating from noon on the day of executing the policy, and the consequent necessity of ascertaining whether a given loss oc-

curred before or after noon, would be an almost limitless task, necessitating an expense nearly thirty times the cost of the present plan, which in this case would equal or exceed the outstanding liabilities, and hence would be unreasonable and impractical.

The case of *Stoddard v. Manzella*, 123 Misc. Rep. 672, 206 N. Y. Supp. 140, discussed a similar situation. It dealt with a mutual insurance company and approved an assessment in proportion to premiums earned. It further discussed the validity of an assessment levied to pay losses and expenses of the company, and while the opinion was by a subordinate court its reasoning, we think, is sound. The court said:

"With the situation existing of daily additions and withdrawals of members and policy holders, it is a practical impossibility to measure with precise exactitude the liability of each member for losses and expenses incurred. All that is essential to make the assessment a valid one is that it be based upon a fair method of calculation and be substantially correct."

 That the assessment was wrong because it included losses after defendant accepted its policies, but under policies issued before appellant assumed any liability.

But the assessment in this respect was according to the plain terms of the statute. The appellant, it seems, was not one of the original organizers of the exchange; it joined later on. The statute quoted, applicable to mutual companies of this kind, speaks of its being formed "to transact business as inter-insurers only between the parties forming the company *and all parties who shall become members and inter-insurers therein*". The statute then provides that each shall be individually liable, with every other solvent member, to ratably pay and discharge all losses and legal

claims accruing against said company. It is immaterial when the policy was issued upon which the loss occurred, provided the loss accrued while the appellant was a member. To help meet that loss was a duty both under the statute and under appellant's contractual relations.

That the assessment was wrong because it included losses which the agent or attorney in fact had no authority to insure against. This refers, as we understand, to insurance against loss by theft and pilferage, the contention being that such insurance was without the power contained in the "Authority from the Subscribers", which, as contended, was limited to casualty insurance. As a matter of fact, it appears that only about three per cent of the business and losses of the exchange arose through theft and pilferage, but, above that and as controlling in this respect the policies issued to the appellant contained printed provisions carrying theft and pilferage. It knew that the exchange was issuing that kind of insurance and the "Authority from the Subscribers" to sign refers to the policy form used by the exchange and authorized the agent to execute such insurance contracts.

That the assessment was wrong, in that the expenses of these proceedings in liquidation of the affairs of the insolvent association should have been assessed in proportion to the risks or liabilities of the policy holders or upon all members equally, and not in proportion to the premiums earned. What we have said of the plan of assessment to meet the outstanding claims of creditors, applies with equal force to the necessary expenses of the liquidation proceedings.

Under this general assignment, it is argued generally that under that portion of the "Authority from the Subscribers", hereinbefore quoted, the appellant

could not be bound jointly, but only severally. The judgment in this case is not joint; it requires the appellant to pay only the amount ratably assessed against it individually. And certainly the appellant, in becoming a member of the exchange, became bound according to the terms of the statute to the same extent as if those terms had been incorporated in its contract on joining the association, and the statute provides that each shall be individually liable with every other solvent member of such company to ratably *pay and discharge* all losses and legal claims accruing against such company. That is, the solvent members together shall ratably pay and discharge all losses and legal claims. That is nothing more than meeting the obligations and protection due to the public. Nothing more has been attempted by the department, nor by the judgment complained of. The way to avoid the obligation is not to join the association.

Next it is contended that the appellant corporation had no power to enter into the insurance business. We assume, without deciding, that the powers of the corporation mentioned in its articles, although very broad, do not authorize it alone to insure others as an ordinary insurance company does, but this is not that kind of business. It has not attempted, nor was it required, to qualify as an insurance company under the laws of the state. In becoming a member of this association, its prime purpose was, not to insure others, but to procure its own insurance about twenty-five per cent less than if purchased from a straight insurance company. It is one of those separate entities the statute speaks of as "persons or parties" who may associate as inter-insurers, and upon becoming a member it becomes bound, not because of its other powers, direct or implied, but because of its

contract in entering the association under the statute authorizing it to do so.

It is further contended that "the trustees' or stockholders of appellant never authorized the execution of the 'Authority from the Subscribers'." The record shows, however, that the appellant corporation had only two trustees and that both of them signed and delivered the instrument.

Further it is contended that the attempt to delegate the authority of the board of trustees of appellant corporation to an agent or attorney-in-fact, was beyond the power of the board, and that such delegation and the contracts executed by such agent were void. Section 7 of the by-laws of the appellant corporation provides that the board of trustees shall have full power to conduct the business of the corporation and in that behalf to elect, appoint or employ such agents or persons as the board may deem desirable or proper. We have no doubt of the validity of the appointment of the agent in this case, who, according to the plan of all the subscribers in forming the association, was an agent common to all of them, it being the purpose of each to obtain cheaper insurance rates; and that the contracts are valid. This contention is also met, in our opinion, by the plea of estoppel alleged in respondent's pleadings and sustained by the proof. Several of these policies, through as many years, were issued to the appellant and used by it and filed with the department of public works of the state in order to qualify and enable it to operate under the law relating to public carriers, and on four different occasions the appellant accepted payment under the policies for property damage claims. *United States Fid. & Guar. Co. v. Cascade Const. Co.*, 106 Wash. 478, 180 Pac. 463.

■ Lastly, it is contended error was committed in providing that judgment on the levy now made shall be without prejudice to further levy and recovery as may be necessary. It appears that the present assessment is sufficient only if all of the parties pay or can be made to pay, and this provision in the judgment was properly inserted, in our opinion, out of precaution, in obedience to the complete enforcement of the terms of the statute that "each shall be individually liable with every other *solvent* member of such company to *ratably pay and discharge all losses and legal claims accruing against such company.*"

Affirmed.

All concur.

