## Commonwealth ex rel. Woodside, Attorney General, v. Seaboard Mutual Casualty Company

*John A. Skelton, Jr.*, and *Robert E. Woodside*, Attorney General, for liquidator.

*Joseph A. Palmer, Theodore S. Gutowicz, J. Webster Jones, Townsend, Elliott & Munson, Martin R. Freedman, Charles H. Weidner, Stevens & Lee, Robert Ruppin, Frank I. Ginsburg, Gerald Monsman, Samuel Handler* and *Compton, Handler & Berman,* for policyholders.

NEELY, J., May 11, 1953.—Seaboard Mutual Casualty Company is in liquidation under this court's decree of dissolution dated December 20, 1951. The Insurance Commissioner of the Commonwealth as statutory liquidator was directed to take possession of the assets and records of the company and liquidate its affairs. The company did business under the mutual plan and wrote several kinds of casualty insurance. All policies, except for certain health and accident coverage, were assessable and contained a provision for contingent liability not to exceed one periodic additional premium payment. The matter is now before us on the petition of the statutory liquidator for an assessment order to pay the company's losses. Hearing was held on this petition on December 29, 1952, and a continued hearing on March 30, 1953. All interested parties had due notice of these hearings.

The earliest unpaid loss arose on a policy issued in the year 1938 and resulted from an automobile accident which occurred on February 3, 1939, in the amount of $125. The most recent unpaid loss resulted from an automobile accident which occurred on December 29, 1951. To the petition for assessment order there is attached the report of A. G. Costello, Deputy Insurance Commissioner, recommending the assessment as prayed for in the petition. The petition containing the attached report was offered in evidence without objection. It is shown therein that the loss claim records of the company as of December 30, 1951, are maintained on a policy year basis, in that claims are allocated in the calendar year wherein the policy

on which claims for loss is made became effective. The company's evaluation of the unpaid claims as shown in its records is as follows:

| Policy Year | No. of Claims | Amount Claimed |
|---|---|---|
| 1938 | 4 | $    525 |
| 1939 | 6 | 775 |
| 1940 | 11 | 12,900 |
| 1941 | 17 | 5,515 |
| 1942 | 8 | 2,850 |
| 1943 | 6 | 2,575 |
| 1944 | 6 | 1,775 |
| 1945 | 6 | 4,050 |
| 1946 | 6 | 3,650 |
| 1947 | 25 | 19,925 |
| 1948 | 80 | 85,535 |
| 1949 | 202 | 155,806 |
| 1950 | 373 | 207,183 |
| 1951 | 448 | 97,418 |
| | 1198 | $598,707 |

In addition to the above estimated loss claims, there are other liabilities as shown in the petition for assessment order totaling $15,397.18, making total estimated liabilities of $614,104.18. The assets as shown in the petition are $83,998.09, leaving an estimated deficit as revealed in the petition of $530,106.09. Because of this deficit it is claimed that there arose a necessity for levying an assessment in order to pay this company's claims and the liquidation expenses.

The company had a deficit in the years 1948, 1949, 1950 and 1951 as revealed by examinations made by the Insurance Department. The amount of the deficit as of November 30, 1951, is shown to have been $255,767.55. The deficit as of December 31, 1950, was $265,411.53. As of December 31, 1948, the deficit amounted to $110,461.52. The exact amount of the deficit is not revealed for 1949, but the testimony indicates that a deficit existed for that year.

The petition of the statutory liquidator for an assessment order suggested assessing policyholders for

the period from January 1, 1948 to December 29, 1951, to pay an assessment equal to one earned premium on each policy in effect during this period. Numerous objections were filed to this proposal at the hearing held on December 29, 1952. The potential assessment for the years 1948, 1949 and 1950, according to the evidence, is approximately $2,850,000, exclusive of Maryland policies. Prior to dissolution this company had levied an assessment on April 12, 1951.

Of the unpaid losses approximately $52,765.00 occurred prior to 1948, the earliest year to be assessed under the plan of assessment proposed in the statutory liquidator's petition. The liquidator proposed to pay these prior losses sustained during the years 1938 to 1947 inclusive out of the proposed assessments to be levied from January 1, 1948, to December 29, 1951.

After considering the matter, the court was of the opinion that further consideration should be given to the question of assessing policyholders for the years 1938 to 1951, inclusive, and further directed that a continued hearing in the matter be held on Monday, March 30, 1953. It appears from the liquidator's report offered in evidence that the total net earned premiums on assessable policies in force for the years 1938 to 1951, inclusive, amounted to $5,260,593.32. Of this amount, however, $502,393.31 represents earned premiums on Maryland policies which are conceded to be of doubtful collectibility because of the Maryland statute of limitations.

At the hearing on March 30, 1953, the liquidator presented three alternate plans. The first plan called for the assessment of policies in effect from February 3, 1939, the date of the earliest unpaid loss, to December 29, 1951, the date of the latest unpaid loss on the basis of 100 percent of the earned premiums on such policies. This plan would require the collection

of an assessment of $5,260,593.32 in order to pay an estimated deficit of $686,978.46, the ratio of collections to the deficit being approximately eight to one. This plan would require policies in earlier years, where the claim liabilities are small, to pay assessments on the same basis as the more recent policyholders where the claim liabilities are large. This plan could result in a gross excess of assessment collections for the earlier years over liabilities and expenses for those years. The evidence shows that the administrative costs of such a procedure would be excessive.

Another plan proposed by the liquidator called for the assessment of the same policies as in the first plan for some percentage less than 100 percent of the earned premiums on such policies. This plan is open to the same objection as the first plan, in that it might collect too much money for the earlier years, and yet if the percentage is reduced might not collect sufficient money for the later years wherein the heavy deficits appear.

The third plan suggested is to assess these same policies, each policy to be assessed for its proportionate share of losses and expenses incurred on a monthly basis during the period the policy was in force. Under this plan the losses incurred during a given month are to be computed. Those losses are determined monthly, —in September of 1942 for example, the losses are estimated at $3,801. The monthly figure of losses is then to be "loaded" by 300 percent.[1] In other words, 300 percent is to be added to the total monthly losses. This "loading" is to provide for uncollectible assessments and expenses of the statutory liquidator.

There is expert testimony indicating that 300 percent is the proper percentage to consider for such pur-

---

[1] A 300 percent "loading" figure was approved by this court in Commonwealth ex rel. Margiotti v. Beaver County Mutual Insurance Company, 46 Dauph. 238 (1938).

pose. This "loaded" figure (for example, $15,204 for September 1942) is then compared to the total amount of net premiums on policies in force in the month of the loss, September 1942, under our example. Policies not in force during the month of the loss, the month of the loss being the month of the accident, of course are not counted in computing the net premiums in force for the accident month. By dividing the monthly net premiums in force into the "loaded" loss figure, there is produced a decimal factor or assessment factor which reflects in percentage the amount per premium dollar for which each policy is liable as an assessment for that accident month. The multiplication of this assessment factor by the amount of the total annual premium in each policy will produce the amount of the policyholder's assessment for that month. The liquidator offered extensive testimony in explanation of the manner and method by which the monthly assessment is to be levied.

One policyholder has objected to the suggested method of assessment on a monthly basis and asks that the assessment be made on a per diem basis. The statutory liquidator points out, however, that it is not only more practical but less complicated and less expensive to the estate to make the assessment on a monthly basis. All the other policyholders represented at the hearing on March 30th expressed themselves in principle as being in favor of assessing policies on a monthly basis.

The method and amount of an assessment are within the court's discretion, and if reasonable and equitable will be conclusive upon all parties: Stockley v. Hartley Brothers, 12 Pa. Superior Ct. 628 (1900) ; Stockley v. Schwerdfeger, 19 Pa. Superior Ct. 289 (1902) ; Snader v. Bomberger, 21 Pa. Superior Ct. 629 (1902) ; Backenstoe v. Kline, 31 Pa. Superior Ct. 268 (1906) ; Wood v. Standard Mutual Live Stock Insurance Co., 154 Pa. 157 (1893).

The essential requisite in ordering an assessment against mutual policyholders is that the procedure shall be equitable and fair and shall be equal in its operation. It is recognized that any plan of assessment involves difficulties. However, an assessment is sufficient if it is based upon a fair method of calculation, is equally applied, and is substantially correct. "No matter what procedure is adopted the utmost that can be attained is a result which approximates an equitable distribution of burden and benefits": 44 C. J. S. 705. See also Lincoln Bus Co. v. Jersey Mut. Casualty Ins. Co. et al., 112 N. J. Eq. 523, 165 Atl. 112; Fishback, State Insurance Commissioner, v. Bothell Bus Co., 150 Wash. 49, 272 P. 67; Mitchell, Insurance Commissioner, v. Pacific Greyhound Lines, Inc., et al., 33 Cal. App. 2d 53, 91 P. 2d 176.

We think that the proposal to assess these policyholders on a monthly basis is essentially equitable. This monthly assessment, however, will be levied with the qualification that each member and policyholder is to be assessed only for the proportionate share of the unpaid losses, expenses and other legal obligations incurred during the month in which his policy was in force.[2]

---

[2] The following is an example of the method used in computing the monthly assessments on a specimen policy with an annual premium of $100, using "round" figures for the purpose of simplifying the illustration. Annual premium on policy $100; "loaded" loss for month of "X", $10,000; policies in force in month of "X", $100,000; decimal factor for the month of "X" 10 percent; assessment for the month of "X"—decimal factor multiplied by $100 equals $10. This method is repeated for the other months when the policy was in force. The total assessment on this specimen policy is not to exceed $100. The monthly "loaded" losses and the total amount of policies in force by months, as well as the decimal factor will vary with each month. The policy may have been in force for 12 months or less. The liability for assessment, however, is limited in accordance with the terms of the policy to an amount not to exceed one annual premium on the policy.

Accordingly, therefore, we enter the following

*Assessment Order and Decree*

And now, May 11, 1953, upon consideration of the petition of Artemas C. Leslie, Insurance Commissioner of the Commonwealth of Pennsylvania, and as such statutory liquidator of Seaboard Mutual Casualty Company (dissolved), for an assessment order, and after hearings thereon on December 29, 1952, and March 30, 1953, and after notice of the hearings by first class mail and newspaper publication to all members and policyholders for the years 1938 to 1951, inclusive, to creditors, claimants and interested parties, as disclosed by the records of dissolved company, and upon motion of Robert E. Woodside, Attorney General, and John A. Skelton, general counsel to the Insurance Commissioner of the Commonwealth of Pennsylvania;

It is hereby ordered and decreed that members and policyholders of Seaboard Mutual Casualty Company (dissolved), who had policies in force during all or part of the period from February 3, 1939, to December 29, 1951, inclusive, pay to the Insurance Commissioner of the Commonwealth of Pennsylvania, and as such statutory liquidator of Seaboard Mutual Casualty Company (dissolved), an assessment equal to each policy's proportionate share of losses, expenses and other legal obligations unpaid at date of dissolution accumulated on a monthly basis for each month the policy was in force from February 3, 1939, to December 29, 1951. Such assessment shall be for the purpose of paying such losses, expenses and other legal obligations on the same monthly basis as that on which assessments are collected, together with liquidation expenses; such assessment shall be computed by the following method:

Unpaid losses, expenses and other legal obligations to be accumulated on a monthly basis for each month from February 3, 1939, to December 31, 1951, in-

clusive, in which a loss, expense or other legal obligation was incurred and remained unpaid at date of dissolution.

Each monthly total of unpaid losses, expenses and other legal obligations to be "loaded" by 300 percent to provide for uncollectible assessments due to deaths, removals and insolvencies, and for liquidation expenses.

Net premiums in force for each month to be divided into the "loaded" monthly total of unpaid losses, expenses and other legal obligations to arrive at a decimal factor which will reflect in percentage the proportionate share per premium dollar for which each policy in force during each month is to be assessed for that month; the decimal factor to be multiplied by the annual premium in each policy to determine the amount of the monthly assessment against each policy; the total assessment on each policy, however, is not to exceed an amount equal to the annual premium charged on each policy for the full annual term of the policy.

The statutory liquidator is hereby authorized and directed to levy and collect the assessment on the basis outlined above so that each member and policyholder is assessed only for the proportionate share of the unpaid "loaded" losses, expenses and other legal obligations incurred during the month in which his policy was in force; any excess collected over and above the amount required for the payment of losses, expenses and other legal obligations and liquidation expenses to be returned proratably to the members and policyholders from whom collected.

The statutory liquidator is directed to give credit to members and policyholders against any amount due under the present court assessment order for any payments that had been made under the company's assessment levy of April 12, 1951.