Davis vs. Parcher & J. & A. Stewart Co.

DAVIS, Receiver, Respondent, vs. PARCHER & J. & A. STEW-
ART Co., Appellant.

SAME, Appellant, vs. PAINE LUMBER Co. (LIMITED), Re-
spondent.

SAME, Respondent, vs. SAME, Appellant.

SAME, Respondent, vs. OSHKOSH UPHOLSTERY Co., Appellant.

SAME, Respondent, vs. BANDEROB and another, Appellants.

*May 9 — June 15, 1892.*

*Mutual insurance companies: Cash payments: Premium notes: Dividends:*
*Assessments.*

1. Provisions in the articles of association of a mutual insurance com-
pany organized under secs. 1896–1901, R. S., allowing the insured to
pay his whole insurance in cash instead of giving a premium note for
a portion of it, and relieving him in such case from further liabil-
ity, are not such a departure from the principle of mutual insur-
ance as to render the company, as to such policies, a moneyed
or stock company. *In re Oshkosh M. F. Ins. Co.* 77 Wis. 366, dis-
tinguished.

2. A by-law providing for the payment of dividends to members who
have given premium notes, excluding those who have paid for their
insurance in cash, is probably invalid as inapplicable to and incon-
sistent with mutual insurance; yet, since the effect of paying such
dividends is merely to increase the assessments upon the premium
notes the same amount, such a by-law is harmless and does not de-
stroy the mutual character of the company.

3. By-laws and rules under which the premium on a five-year policy
was payable in five equal payments, one at the commencement of
each insurance year, the first payment being made in cash and a
premium note being given for the others, are not in conflict with
sec. 1907, R. S., which provides that in no case shall the premium
note be more than twice the whole amount of the cash premium.
Such an arrangement amounts to a cash payment of the annual
premium in advance at the commencement of each year.

4. An assessment upon all the deposit or premium notes which came to
the hands of the receiver of an insolvent mutual insurance company
did not include certain notes which, before the company became
insolvent, had been surrendered to the makers without payment of
their proportionate share of losses. No objection to such sur-

Davis vs. Parcher & J. & A. Stewart Co.

render had been made by any member. *Held,* that the makers of notes not surrendered will not be allowed to embarrass the receiver in the settlement of the affairs of the company by asserting the illegality of such surrender.

5. It is not a valid objection to such assessment that it was made upon estimates of liabilities, without any reference having been made to determine definitely the amount thereof. Nor is forty per cent. necessarily an excessive assessment.

6. An assessment of a certain percentage on all premium notes without regard to the just proportion of losses and expenses incurred during the life of each policy, and without regard to the amount paid on each note, is invalid although it does not require any member to pay more than the face of his note.

7. A member of a mutual insurance company organized under secs. 1896–1901, R. S., cannot be assessed on his premium note beyond the amount remaining unpaid thereon. *Rundle v. Kennan,* 79 Wis. 492, and 81 id. 212, distinguished.

APPEALS from the Circuit Court for *Winnebago* County.

The Oshkosh Mutual Fire Insurance Company was organized in 1886, under ch. 89, secs. 1896–1901, R. S., as a mutual insurance company. The written articles of organization provide that the business of the company shall be conducted on the plan of mutual insurance, and that all persons insured therein shall be members of the company and at all times bound by the stipulations and provisions in such articles and by the by-laws of the company not inconsistent therewith. The articles further provide that "premium notes may be received from the insured, which shall be paid at such times and in such sum or sums as the directors may require for the payment of losses and expenses happening during the term for which the policies were issued, to the amount of their premium notes, but the liability of any policy holder is limited to the amount of the note given by him " (sec. 15); also that "any persons applying for insurance, so electing, may pay a definite sum in money, to be fixed by said corporation, in full for said insurance, in lieu of a premium note " (sec. 16).

The articles of association successfully passed the official scrutiny of the attorney general, and the promoters of the corporation succeeded in satisfying the insurance commissioner that all the conditions of the statute, precedent to the issuing of the patent of incorporation, had been duly complied with. The commissioner thereupon issued such patent authorizing the company to commence business under its articles of association. The company organized by the appointment of the proper officers and the adoption of a code of by-laws, and proceeded to perform the functions of a duly incorporated mutual fire insurance company. In October, 1888, the company adopted an amended code of by-laws. A sufficient statement of such by-laws will be found in the opinion.

In November, 1889, the company became insolvent. An action was thereupon commenced in the circuit court by certain of its directors and creditors to wind up its affairs, and a receiver thereof was duly appointed by the court, who qualified and entered upon the performance of his duties as such. That action was before this court on the question of the right of the plaintiffs therein to maintain it, and the relations of the attorney general to the litigation. 77 Wis. 366. Just before the commencement of such action the board of directors made an assessment of forty per cent. of the full face thereof on all deposit or premium notes held by the company, which assessment was ratified and confirmed by the court, after the receiver was appointed, on his *ex parte* application. Notice of such assessment was duly given by the receiver to the makers of such notes, pursuant to the order of the court.

The respective defendants in these actions are policy holders in the company, and gave premium notes for their insurance. The actions are to recover such forty per cent. assessment on said notes, respectively. The circuit court gave judgment in each case for the amount of such assess-

Davis vs. Parcher & J. & A. Stewart Co.

ment, limited in one case (that against the *Paine Lumber Company*) to the amount unpaid on the note, which was only twenty per cent. thereof. Each defendant appeals from the judgment against it or them, and the receiver appeals in the case above mentioned because the recovery therein is only for twenty per cent. of the face of the note.

For the plaintiff there was a brief by *Finch & Barber*, and oral argument by *Charles Barber*. They argued, among other things, that the cancellation and surrender of the notes not included in the assessment was in the usual and ordinary course of business; the insurance risks being terminated by such cancellation. This power of cancellation and adjustment was inherent in the company. It was one of the things that it necessarily had the right to do in order to carry on the business of insurance, provided the same was done in good faith, in the ordinary course of business, and at a time when it was not known that the company was insolvent. *Hyde v. Lynde*, 4 N. Y. 387; *Campbell v. Adams*, 38 Barb. 132; *York Co. M. F. Ins. Co. v. Turner*, 53 Me. 225; *Wadsworth v. Davis*, 13 Ohio St. 123; *Miner v. Judson*, 2 Lansing (N. Y.), 300; *Tolford v. Church*, 66 Mich. 431; *Union M. F. Ins. Co. v. Spaulding*, 61 id. 77; *Wilson v. Trumbull M. F. Ins. Co.* 19 Pa. St. 372; *Columbia Ins. Co. v. Buckley*, 83 id. 293; *Sands v. Hill*, 55 N. Y. 18; dissenting opinion of Denio, J., in *Bangs v. Skidmore*, 21 N. Y. 142; May, Ins. (3d ed.), sec. 555.

For the defendants *Parcher & J. & A. Stewart Co.* and *Oshkosh Upholstery Co.* there was a brief by *Phillips & Kleist*, and oral argument by *M. C. Phillips*. They contended, *inter alia*, that the assessment was invalid because no reference was ever had to legally adjust, ascertain, and settle all questions of law and fact involved in it. *Ex parte Campbell*, 13 How. Pr. 481. It includes liabilities arising before membership period. Sec. 1907, R. S.; *Koehler v.*

*Beeber*, 122 Pa. St. 291; *Sands v. Graves*, 58 N. Y. 94; *Planters' Ins. Co. v. Comfort*, 50 Miss. 662; *Stewart v. Northampton M. Ins. Co.* 38 N. J. Law, 436; *Farmers' M. F. Ins. Co. v. Chase*, 56 N. H. 341; May, Ins. sec. 559. It is excessive, and for that reason is invalid. *People's E. M. F. Ins. v. Babbitt*, 7 Allen, 235, 238; May, Ins. sec. 558, and note to 559.

For the defendants *Paine Lumber Co. (Limited)* and *John Banderob* and another there was a brief by *Thompson, Harshaw & Davidson*, and oral argument by *A. E. Thompson*. To the point that the intentional omission of the deposit notes which had been surrendered invalidated the assessment, they cited *Marblehead M. F. Ins. Co. v. Hayward*, 3 Gray, 208; *People's E. M. F. Ins. Co. v. Arthur*, 7 Gray, 267; *Burke v. Smith*, 16 Wall. 390; *Bedford R. Co. v. Bowser*, 48 Pa. St. 29; *Putnam v. New Albany*, 4 Bissell, 365; *Mann v. Cooke*, 20 Conn. 188; *Mann v. Pratt*, 2 Sandf. Ch. 257; *Mann v. Currie*, 2 Barb. 294; *Slee v. Bloom*, 19 Johns. 456; *Hughes v. Antietam*, 34 Md. 316; *Melvin v. Lamar Ins. Co.* 80 Ill. 446; *Osgood v. King*, 42 Iowa, 478; Green's Brice's Ultra Vires (2d Am. ed.), 142, and cases cited in note p. 496; Berryman, Digest Ins. 158, par. 34; *Herkimer Co. M. Ins. Co. v. Fuller*, 14 Barb. 375; *Great Falls M. F. Ins. Co. v. Harvey*, 45 N. H. 298; *Hart v. Achilles*, 28 Barb. 576; *Dana v. Munro*, 38 id. 528.

Lyon, C. J. We are not aware that a case has before reached this court involving the consideration of the relative rights and duties of members of a mutual fire insurance company organized under that portion of ch. 89, R. S., included in secs. 1896–1901. Indeed, it was stated in the argument of the learned counsel for the receiver, and the accuracy of the statement was not challenged, that no other than the Oshkosh Mutual Fire Insurance Company has ever been organized under the provisions contained in

those sections. All other mutual fire insurance companies in this state seem to have been organized under other statutes, the provisions of which differ from those contained in the above sections in many important particulars. Such other statutes are collated in S. & B. Ann. Stats. as portions of ch. 89, and are entitled, respectively, " Mutual Insurance Companies in Cities and Villages," " Town Insurance Companies," " Millers' and Manufacturers' Mutual Insurance Corporations," "Druggists' Mutual Insurance Companies," and " Insurance of Church Property." So we must determine the relative rights and obligations of the members of the Oshkosh Mutual Fire Insurance Company mainly upon the provisions of those portions of ch. 89 under which it was organized, upon the articles of association, the by-laws of the company, and its methods in the transaction of its business, without being able to derive much aid from cases arising under and governed by other statutes. The task is by no means an easy one. The organic law of the company (R. S. secs. 1896–1901, 1907, 1945) contains general provisions for the organization and incorporation of both stock and mutual fire insurance companies, so commingled that it is difficult to determine which of them apply to stock companies, and which of them to mutual companies alone, or which of them (if any) are common to both. Most of its provisions, however, relate to stock companies alone, and those affecting mutual companies are exceedingly meagre and unsatisfactory. The articles of association of the Oshkosh Company seem to be entirely consistent with the statutes, and do not violate any essential principle of mutual insurance. But this cannot be said of the by-laws. In some respects they disregard the distinction between stock and mutual companies, and contain provisions antagonistic to the organic law of the company. Besides, some of them are quite unintelligible. In addition to the above difficulties, the practices of the company

in respect to some of its most important functions seem to have been unauthorized either by the organic law or its defective by-laws. Under the above conditions it is not strange that the company ran its course from birth to insolvency in a little more than three years.

As already observed, the statutes contain but few specific provisions for the government of mutual companies organized under the above sections, but in the main leave them to pursue their business as they will, subject only to those general rules of law which prescribe the limits within which they must operate and the relative rights and liabilities of their members. The articles of association seem to comply with the requirements of the statute and to be in accord therewith. A point is made on the articles of association which may as well be here considered. It is argued on behalf of the receiver that the clause therein which permits the insurer to pay a fixed sum in cash in full for his insurance, instead of giving a premium note for a portion thereof, is a departure from the principle of mutual insurance, and makes the company, as to such policies, a moneyed or stock company. It is said that the opinion by Cole, C. J., in *In re Oshkosh M. F. Ins. Co.* 77 Wis. 366, supports that view. We do not agree with counsel. This is either a mutual or a stock corporation. Under our statutes it cannot be both, and there is nothing in the case above referred to which fairly admits of the construction claimed for it. No such question was involved in that case. It was simply there determined what were the rights and duties of the attorney general in respect to the litigation. Neither do we think that the clause in the articles of association which permits the insured to pay his whole insurance in money in the first instance, and relieves him from further liability as a member of the company, is contrary to the principle of mutual insurance. It is the equivalent of an assessment to the full amount of the premium note

at its inception, had a note been given. It surely cannot alter the principle that the insured, instead of depositing his note with the company, pays into its treasury the amount for which the note would otherwise have been given. Authorities are not wanting to the proposition that such payment in cash is entirely consistent with the principle of mutual insurance. The cases cited by counsel for some of the defendants support this proposition. They are *Mygatt v. N. Y. Prot. Ins. Co.* 21 N. Y. 52; *Ohio Mut. Ins. Co. v. Marietta Woolen Factory,* 3 Ohio St. 348; *Union Ins. Co. v. Hoge,* 21 How. 35. Our own case of *Rundle v. Kennan,* 79 Wis. 492, is to the same effect. And here it may be observed that the case of *Powell v. Wyman,* 51 N. W. Rep. (Minn.), 921, which is cited to show that an insurance company may, at the same time, perform the functions both of a mutual and stock company, does so hold. But the decision rests upon a statute which authorizes the company to act in such dual capacity. The case is correctly decided, no doubt, but it does not aid in giving construction to our statutes. The case fully recognizes the doctrine that the payment of the whole premium in cash does not of itself determine that the transaction is not one of mutual insurance.

We reach the conclusion, therefore, that the Oshkosh Mutual Fire Insurance Company was legally organized as a mutual company only; that all policy holders therein are members thereof; and that its premium notes are valid obligations, assessable to pay losses and expenses, unless there is something in the by-laws of the company or the methods of its business management which has destroyed the validity of such notes. If such a result has been accomplished, it is because of the existence of one or more of the following conditions:

1. The amended by-laws provide for the payment of dividends to members who had given premium notes, ex-

cluding those who paid for their insurance in cash in the first instance. Probably this by-law is invalid, as being inapplicable to and inconsistent with mutual insurance. But such dividends were necessarily paid out of the cash funds of the company, which ought to have been paid out only for losses and expenses. So the effect of paying dividends was simply to increase the assessments of premium notes to pay losses and expenses just the amount paid to the makers of such notes as dividends. Thus with one hand each maker received such unauthorized dividends as profits, and with the other returned the same amount to the company as assessments for losses and expenses, which, had he not received the dividends, he would not have been required to pay. Hence this apparent departure by the company from the methods of mutual insurance was quite inconsequential, and did not destroy its character as a mutual company, or affect the validity of premium notes held by it.

2. It is further claimed that such premium notes are void, under sec. 1907, R. S., which provides that in no case shall the premium note be more than twice the whole amount of the cash premium. It is said that on a five-year policy the cash premium, under the by-laws of the company, is but one fifth, and the premium note four fifths, of the gross amount of the insurance. While this is apparently true, it is not really so. An insurance for five years, the premium on which is, say, $100, is made payable, under the by-laws and by the usage of the company, in annual payments of $20 each. The first payment is made in cash when the policy issues, and a premium note is given for the other $80. But there seems to have been a rule of the company by which $20 thereof became due and payable at the commencement of each insurance year. This was, in substance and effect, a permanent annual assessment of $20 on the premium note, and it amounted to a cash payment of the annual premium in advance at the

commencement of each insurance year. Of course, under the statutes and by-laws, the directors might have made assessments payable at an earlier date. Under these circumstances, we hardly think that the methods of the company in this particular are in conflict with the true intent and meaning of the statute under consideration, for it contemplates cash payments of premiums in advance of their being earned. It would be unreasonable to hold that a practice which leads to such a result is prohibited by the statute.

We conclude not only that the company has not lost its distinctive character as a mutual fire insurance company, but that none of its by-laws or irregularities in the conduct of its business have operated to affect the validity of its premium and deposit notes, or the liability of the makers of such of those notes as have come to the hands of the receiver, to assessments for losses and expenses. We are further of the opinion that for the purposes of such assessments there is no distinction between premium and deposit notes, that is to say, between assessable notes given for premiums pending the organization of the company and after it was fully organized.

It remains to determine whether the assessment of forty per cent. upon all the premium notes which came to the hands of the receiver is a legal assessment. Its validity is attacked on several grounds, some of which will now be considered.

1. The court found that premium and deposit notes to a very large amount were surrendered by the company to the makers thereof, without first requiring them to pay their proportionate share of losses properly chargeable to them, accruing while they were members of the company. It is maintained that an assessment which does not include these notes thus illegally surrendered is invalid. It may be conceded that such notes should not have been thus

surrendered. Yet the case shows no objection thereto by any member of the company, and the members of the company are alone affected thereby. The makers of the notes not thus surrendered should not now be allowed to embarrass the receiver in the settlement of the affairs of the company by asserting the illegality of such surrenders. The effect of allowing them to do so at this late day, and after the company has become insolvent, would necessarily force the receiver into interminable litigation with the makers of the surrender notes. Besides, it may be, as is claimed, that those notes were surrendered in due course of business, when the company was solvent, and under justifiable circumstances. If so, the surrenders were valid.

2. We perceive no force in the objection that the assessment was made upon estimates of liabilities, without any reference having been made to determine definitely the amount thereof. Neither do we think that forty per cent. is necessarily an excessive assessment. The parties liable thereto, who have paid only twenty or forty per cent. of their premium notes, may congratulate themselves on their good fortune if the result shows that the assessment is sufficient to pay accrued losses and expenses.

3. The assessment is a horizontal one,— just forty per · cent. of the face of each note, without regard to whether that is or is not the just proportion of the losses and expenses which occurred during the life of each policy, and hence properly chargeable to the maker of the note, and also without regard to the amount which had been paid on such note. It appears that this assessment requires some members of · the company to pay a proportionate share of losses which occurred before they became members. This violates a cardinal rule of mutual insurance, as well as the rule of the statute. Sec. 1907, R. S. It also appears that eighty per cent. of some of the notes had been paid, while only twenty per cent. had been paid of other notes. While

the court refused to require any member to pay more than the face of his note, yet those that had paid sixty per cent. or more were required to pay their notes in full, while others might escape by paying sixty per cent. thereof. This is grossly unequal and unjust and, in the absence of any statute or contract authorizing it, cannot be upheld. It has been determined by this court, and is the law of this state, that such an assessment is invalid. *Great Western Tel. Co. v. Burnham*, 79 Wis. 47; *Bowen v. Kuehn*, 79 Wis. 53. For the above reasons the forty per cent. assessment must be held invalid. The rule here asserted gives full effect to sec. 1945, R. S., in that it relieves the maker of the premium note from the payment of unearned premiums. Earned premiums consist of the proportionate share of losses and expenses which may have accrued during the term of the insurance, not exceeding the amount of the premium note. Doubtless the same rule would apply in computing the earned premiums on a cash policy, the same not to exceed the cash premium paid.

It follows from the above views that each of the judgments from which these appeals were taken must on the appeal of the defendant therein be reversed.

It remains to determine the appeal of the receiver in the action against the *Paine Lumber Company*, which appeal is predicated upon the claim that the assessment of forty per cent. upon the note of that company was valid, notwithstanding it had already paid eighty per cent. thereof. This claim seems to be based upon the ruling of this court in *Rundle v. Kennan*, 79 Wis. 492, and *Kennan v. Rundle*, 81 Wis. 212. It was held in those cases that by the law of the organization of the company which the court was there dealing with (the Manufacturers' Mutual Fire Insurance Company of Milwaukee), the member paying his premium in cash was still liable to assessments on the property insured for losses. That company was organized under the

statute for the organization of millers' and manufacturers' mutual insurance corporations (S. & B. Ann. Stats. secs. 1941a–1941f), one provision of which is that losses shall be assessed on all the property insured. The law of the Oshkosh Company is, in effect, that losses and expenses shall first be paid out of cash assets, and, when these are exhausted, by assessments on premium notes alone, and that the member who has paid his whole premium in cash shall not be liable to further assessment for losses or expenses.

Hence, in any event, the court was right in restricting the assessment of the *Paine Lumber Company* to the face of its premium note, and on the appeal of the receiver the judgment must be affirmed.

On the appeal of the defendant in each case the judgment is reversed, and the cause will be remanded with directions to the circuit court to dismiss the complaint.

*By the Court.*— Ordered accordingly.