IN RE BUILDERS MUTUAL CASUALTY COMPANY: J. P. CULLEN & SONS, INC., and others, Appellants, vs. MORTENSEN, Commissioner of Insurance, Respondent.

*September 16—December 6, 1938.*

For the appellants there were briefs by *Barber, Keefe, Patri & Stillman* of Oshkosh, and *Milton T. Murray* and *Robert E. Tehan,* both of Milwaukee, and oral argument by *Frank B. Keefe* and *W. Mead Stillman.*

For the respondent there was a brief by *Duffy, Duffy & Hanson,* and oral argument by *Edward T. O'Neill* and *Russell E. Hanson,* all of Fond du Lac.

The following opinion was filed November 9, 1938:

WICKHEM, J. The Builders Mutual Casualty Company, a Wisconsin corporation, was engaged in the insurance business from 1915 to January 1, 1933. During all this period the principal part of the company's business was writing workmen's compensation insurance, although in January, 1922, its articles were amended so as to permit the company also to engage in writing accident, health, and automobile insurance. It is clear, however, that the only insurance of any consequence, aside from workmen's compensation policies, which was being written at the time the company went into liquidation was automobile and public liability insurance. During the years 1926 to 1932, inclusive, the company sustained heavy losses, all of its losses (except upon its portfolio of investments) being in the field of workmen's com-

pensation insurance. Its other lines of insurance showed a profit. The loss ratio during the years mentioned varied from $102.52 in 1927 to $148.59 in 1931. By loss ratio of $148.59 it is meant that for each $100 of premium received in 1931, $148.59 was paid out for workmen's compensation liability. On or about January 1, 1933, as a result of the succession of losses and a shrinkage in investment assets, the board of directors decided to place the company in voluntary liquidation. Having levied a seven and then a ten per cent voluntary assessment on policyholders, they later increased the assessment to twenty per cent, offsetting against this assessment such advanced deposit premiums as had been furnished by policyholders. This assessment was for the policy years 1926 to 1931, inclusive. On December 27, 1932, the company entered into a contract with the Employers Mutual Liability Insurance Company of Wausau, whereby the settlement and payment of Builders claims should be handled through the facilities of that company. The agreement provided for the reinsurance of former policyholders of the Builders Mutual with the Employers, and that one tenth of the premium charged by the Employers was to be returned as a credit on certain policyholders' assessments with the Builders Mutual in view of the fact that the rates charged by the Employers Mutual were ten per cent lower than those charged by the Builders Mutual. Under this contract the Employers engaged in the settling and liquidating of loss claims of the Builders Mutual Casualty Company in all forms. Meantime, the liquidating committee of the company engaged the services of the firm of Duffy, Duffy & Hanson, lawyers, to aid in the collection of the assessments heretofore referred to as voluntary assessments. Prior to the voluntary liquidation, a reinsurance contract had been entered into with the Security Mutual Casualty Company for the year 1932 for the purpose of avoiding any losses

during that year if liabilities exceeded premiums, the contract providing that the Builders Mutual Casualty Company should be liable for eighty-five per cent of the gross earned premiums for workmen's compensation and seventy-five per cent of the gross earned premiums for other insurance, and that they should be liable for the losses if they exceeded that amount of premiums.

The liquidation of the company proceeded upon the foregoing basis until August, 1933, when difficulties in collecting the assessment caused the liquidating committee to agree to permit the insurance commissioner of the state of Wisconsin to petition the circuit court for Dane county for authority under sec. 200.08, Stats., to take over the company and liquidate it. This petition was made, and an order for liquidation was entered by the court under date of August 10, 1933. Thereafter, the insurance commissioner issued an order to show cause why an assessment against the members, policyholders, and subscribers of the Builders Mutual Casualty Company should not be made, and at this time there was also filed the insurance commissioner's petition for first assessment. The petition disclosed that the liabilities and obligations of the Builders Mutual Casualty Company exceeded its available assets by over $200,000; that its assets consisted of accounts receivable of $77,314.76; and its investments, including mortgages, bonds, and real estate of the value of $242,891.29. The petition set forth further that the liabilities were principally claims under workmen's compensation insurance, although there were claims under other types of insurance. The estimate of outstanding claims was $493,000. Upon hearing, a decree of assessment was entered directing an assessment of twenty per cent of the total earned premium on each policyholder's workmen's compensation policy for the years 1926 to 1931, inclusive. It was provided that this assessment should supersede and replace the previous volun-

tary assessment levied by the board of directors. Certain rules and regulations were presented to the circuit court for Dane county for approval in accordance with the provisions of sec. 200.08 (6), and were approved. The rules contained an order appointing Mr. Russell Hanson of the firm of Duffy, Duffy & Hanson as special deputy insurance commissioner to assist in liquidating, and Mr. Ben Kuechle, manager of the Employers Mutual Liability Insurance Company, as special deputy to act in liquidation of claims. The books of the company which were located in Madison, where the company had its principal office, were moved to Fond du Lac, and an office established there by Mr. Hanson. Proceedings were then commenced for the purpose of collecting assessments and liquidating assets.

The procedure consisted of billing policyholders with successive notices of assessment, personally contacting policyholders, and ultimately bringing suit for delinquent assessments. The receipts were turned over to Deputy Kuechle to be used in settlement of claims. Between August 15, 1933, and September 30, 1937, the deputy in charge of claims received from the liquidation of assets the sum of $348,389.90, and turned over to the deputy in charge of liquidation the sum of $281,547.88. The balance, except for two items, was disbursed for attorneys' fees, office rent, supplies, sheriff's fees, etc. The sum of $14,572.73 was repaid to the First National Bank of Madison to discharge a loan to the Builders Mutual Casualty Company secured by collateral which was released by the payment. There remained on deposit the sum of $2,704.13.

On September 15, 1937, the commissioner of insurance petitioned the circuit court for Dane county for the levy of a second assessment in the amount of $495,589.19. This amounted to twenty per cent of the earned workmen's compensation premiums on policies for the years 1926 to 1932,

inclusive. The petition came on for hearing on October 11, 1937, November 2, 1937, and December 9, 1937, and objections to the granting of the petition were presented by various groups of policyholders. The showing made to the court was that outstanding liabilities amounted to $135,000, all of which were workmen's compensation claims, and that the expenses for final liquidation would be between $23,000 to $25,000. Petitioner admitted cash in his possession of $2,704.13, and estimated that $27,500 might be collected on the first assessment over a period of some years. The assessment of $495,589.19 was asked for on the basis of an estimate grounded on past experience of the liquidators that approximately twenty-five per cent of this sum would be collectible and that an assessment of this size was necessary in order to insure enough funds to meet the remaining claims and expenses of liquidation. The second assessment was in the amount asked for by the petition and obviously founded upon recognition of the validity of petitioner's estimates.

The errors relied upon are that the evidence submitted on the hearing was legally insufficient to sustain the order, and that the order is erroneous and inequitable. It is conceded by both parties that the following showing must be made to warrant the second assessment:

(a) That there is an assessment liability on the part of the policyholders.

(b) That due diligence has been exercised in the liquidation procedure to date.

(c) That the legal resources for effecting collections of the first assessment have been exhausted.

(d) That there were incurred during the years 1926 to 1932, inclusive, losses in excess of premiums.

(e) That there presently exist incurred, but unpaid losses for such period.

(f) That there remain insufficient assets for the payment of such losses.

(g) That the amount of the proposed assessment demanded is reasonable.

(h) That the levy of a second assessment is presently necessary.

(i) That the procedure followed is legal and equitable.

More tersely put, an assessment is properly levied if it be presently necessary, provided that it is based on a fair method of calculation, is equally applied, and is substantially correct.

The first contention of the appellants is that there was a want of proof of facts legally sufficient to justify a second assessment. We have carefully examined the evidence in this respect and think the contention unsound. The principal objection to the evidence is that it consists largely of opinions by the liquidator and is barren of precise information as to which of the policyholders assessed upon the first assessment are uncollectible. We deem this to be unnecessary. This was a company with some three thousand policyholders, and the showing required would be unreasonably detailed and expensive. What the liquidator did show was the method of proceeding, the fact that diligent efforts were made to collect the first assessment, and that the methods pursued were reasonably calculated to produce proper results. Some criticism is made of the fact that the firm retained by the deputy commissioner handled suits itself rather than turn them over to local attorneys to handle, and that if the latter procedure had been adoped, more efficient results would have accrued. We think that was a matter of judgment, that the court was entitled to conclude that the methods adopted were adequate, and that their results accurately reflect the situation with respect to collectibility of claims. The trial court took the position that with outstanding claims of $135,000 and assets of not more than $27,000, after several years of attempts to collect the first assessment with reasonable diligence, it was obvious that a second assessment was required.

With this conclusion we agree. We do not think that the opinion should be extended by a detailed discussion of this phase of the case.

The next contention is that it was inequitable and unnecessary to assess the sum of $495,589.19 for the purpose of raising approximately $160,000 to pay remaining claims and expenses. The rule to be applied is that stated in *Seamans v. Millers' Mutual Ins. Co.* 90 Wis. 490, 496, 63 N. W. 1059:

"It is true that the assessment in this case makes a very large allowance for shrinkage and uncollectible assessments, but the court below approved the estimate upon testimony given by the receiver's attorney, who has managed the receiver's legal affairs from the beginning and has very complete knowledge of the probabilities of collection, and we cannot say that too great an allowance was made."

There is very little to be added to what was said in the *Seamans Case.* The trial court, after considering the previous attempts to collect the first assessment and determining that due diligence had been exercised and but twenty-five per cent of the assessment collected, was entitled to rely upon the judgment of those in charge of the liquidation, and to conclude that this very large sum should be assessed in order that an adequate sum be realized. It is, of course, obvious that such a sum should be assessed as will be reasonably calculated to meet all the claims and expenses so that a third assessment will not be necessary. The trial court properly decided that a second assessment should be made, and that the sum fixed is not unduly large in view of the past experience and judgment of the receiver that such an amount is necessary to meet the needs of the situation.

The next contention is that the order is inequitable and unlawful because it fails to assess the loss liability from 1926 to 1932, inclusive, against all policyholders carrying public

liability and automobile insurance policies with the Builders Company. The assessment against holders of workmen's compensation policies alone was based upon the fact that the losses which compelled the company's liquidation were in this department only and did not arise out of the other forms of insurance issued by the company. The other forms of insurance operated at a profit, and all of the losses from operation were in the field of workmen's compensation policies. The contention is made that there was no evidence whatever that disclosed any division or classification of insurance with respect to kinds of insurance or any statutory authority for assessment in the departments of a mutual company because of the loss in one department. In this connection it might be noted that this attack upon the assessment was not made in the lower court, and the rules set forth in *Cappon v. O'Day,* 165 Wis. 486, 490, 162 N. W. 655, are clearly applicable. It was there said:

"One of the rules of well nigh universal application established by courts in the administration of the law is that questions not raised and properly presented for review in the trial court will not be reviewed on appeal. 3 C. J. 689. The reason for the rule is plain. If the question had been raised below, the situation might have been met by the opposite party by way of amendment or of additional proof. In such circumstances, therefore, for the appellate court to take up and decide on an incomplete record questions raised before it for the first time would, in many instances at least, result in great injustice, and for that reason appellate courts ordinarily decline to review questions raised for the first time in the appellate court."

On the merits, however, it is evident from an examination of the record that the three lines of insurance which were written by the Builders Company were separately classified and rated, and since the evidence shows that all of the income of the company went into a common fund out of which all

payments of losses were made, and that over a period of years the classes of insurance other than workmen's compensation operated at a profit, it is evident that surpluses necessarily arising from this part of the business had been used in the past to discharge claims under the Workmen's Compensation Act, and to build up the investment portfolio. Under these circumstances, it is equitable and fair to levy the assessment upon the stockholders in that branch of the company's activities whose premiums were insufficient to carry the risks against which they were insured. Such procedure is now expressly authorized by sec. 201.22, Stats., enacted in 1937, which reads as follows:

"A mutual insurance company may classify the property or risks insured at time of insuring the same, under different rates corresponding as near as may be to the greater or less probability of loss which may be attached thereto. In case a mutual insurance company does classify the property or risks insured by it, said company may levy assessments or fix rates for each class of risks based upon the ascertained or estimated probability of loss involved in said class of risks."

We now come to the two points of greatest difficulty in connection with the second assessment. It is contended that the order is inequitable and unlawful because an additional flat assessment of twenty per cent is levied on all workmen's compensation policyholders for the years 1926 to 1932, inclusive, irrespective of the fact that the loss ratio of the company on this type of policy varied substantially and materially during this period. The contention of appellant is that one who was a policyholder in 1927, for example, should be assessed upon the basis that there was a loss of $2.52 on every $100 of premium taken in that year, whereas the policyholder in 1931 should be assessed upon a basis that there was a loss of $48.59 on every $100 premium, thus breaking the assessment down by years and assessing the policyholders of a

particular year only the losses sustained during that year. Reliance is had upon sec. 201.02 (3) (d), Stats. 1937:

"(3)  Persons associating to form a mutual insurance company shall subscribe articles of incorporation which shall contain: . . .
'  "(d)  The condition of membership which shall provide that each policyholder have one vote and shall be liable *for a pro rata share of losses and expenses incurred during the time the policyholder has been a member of the company,* unless the liability of all members is limited according to law."

The contract which as interpreted by appellants is relied upon as furthering their contention, provides:

"The applicant agrees that, for the payment of claims and expenses incurred during any year, the members during any year may be required to make additional payments . . . provided that such liability shall not exceed an amount equal and in addition to the annual premium on the policy for the year during which the losses and expenses were incurred."

Appellants construe the contract to mean that the court or a board of directors may levy an assessment upon the members only for a deficiency based upon claims and expenses incurred during a year in which those assessed were members. It is claimed that the present scheme of assessment will result in unduly large assessments upon one who was a policyholder in the year when the loss ratio was low and will, in effect, compel him to contribute to losses sustained during a year in which he was not a policyholder.  It is conceded by appellants that there are very great difficulties in the way of a determination that is absolutely accurate, and this concession we have no difficulty in accepting.

It is contended by respondent that there is no statutory requirement applicable to the detailed manner in which assessments are to be levied, and that all that is essential is to hit upon a fair method of calculation that is substantially correct.

Respondent contends that the method adopted was the only practical method in view of the situation, and that such an allocation as is demanded by appellants is not required either by law or by the contract of insurance. Policies in the company in each class were issued on a policy-year basis, a policy year being the year following the date of issuance, and the premiums were charged on the same basis. Membership in the company was determined by calendar years as of the date of the issuance of the policy. The losses were on an incurred rather than a paid basis and were allocated only to calendar years and classes of policies. The premium income, except in a bookkeeping sense, was not allocated in any way and was used for the current payment of losses and expenses, regardless of policy, calendar, or loss incurred year. Thus, the income of a particular year was disbursed on claims incurred not only in that year but in prior years thereto, so that premiums paid by the policyholders in 1932 were applied not only to 1932 losses but losses as far back as 1926. The respondent contends that the only practical allocation was by segregating members into groups determined by the calendar years of their membership and then assessing a flat assessment which would, of course, make the amount payable vary with the amount of premiums paid in each year. In this connection it is necessary to consider two Wisconsin cases bearing upon this subject.

In *Davis v. Parcher & J. & A. Stewart Co.* 82 Wis. 488, 489, 52 N. W. 771, the facts involved a mutual fire insurance company, the articles of which provided:

"Premium notes may be received from the insured, which shall be paid at such times and in such sum or sums as the directors may require for the *payment of losses and expenses happening during the term for which the policies were issued* to the amount of their premium notes, but the liability of any policyholder is limited to the amount of the note given by him."

There was the further provision that:

"Any persons applying for insurance, so electing, may pay a definite sum in money, to be fixed by said corporation, in full for said insurance, in lieu of a premium note."

An assessment was levied for forty per cent of the face of each note without regard to what amounts had previously been paid on the notes or whether it constituted a just proportion of the losses and expenses which occurred during the life of each policy. It was held that this was invalid. The court said (p. 498):

"It appears that this assessment requires some members of the company to pay a proportionate share of losses which occurred before they became members. This violates a cardinal rule of mutual insurance, as well as the rule of the statute."

This case is claimed by appellants to be flatly in point and to dispose of the contention favorably to appellants. It is asserted by respondent that the case is different from that at bar for the reason that in the *Davis Case* the contract established liability for losses happening *during the term for which the policy was issued,* whereas in the case at bar the assessment provided by the contract is for *losses incurred during a year* in which a policyholder was a member. It is claimed that this construction is supported by the case of *Gilman v. Druse,* 111 Wis. 400, 408, 87 N. W. 557, in which the court said:

"As to the validity of the assessment, the first claim of the respondent is that it was invalid because it was a horizontal assessment levied upon all policyholders, and not confined to policyholders who were such at the time the losses which it represents occurred. . . . This argument would be strong and perhaps controlling, were it not for the provision of the statute (sec. 1962, Stats. 1898) which declares that, if the amount of premiums received for insurance 'by any such corporation in any one year shall be insufficient to pay the losses, such corporation may levy an assessment upon each

member thereof, in proportion to the amount insured, to cover such deficiency.' . . . The statute seems to contemplate and require one assessment for the year upon all persons insured during that year, and this was what was done in the present instance."

Respondent asserts that while the statute in the *Gilman Case* is no longer a part of the Wisconsin law, its content was incorporated as part of the contract of insurance in the case at bar, and that the only requirement, so far as the liquidator is concerned, is to show that the assessment is levied upon members during the year in which losses and expenses were incurred.   It should be pointed out, however, with reference to the *Gilman Case,* that there the losses involved in the assessment all occurred in a single year.   The policy was one against hail.   During the season of 1898 there were a large number of hail losses, and due to the necessities of the situation, the board of directors levied an assessment of five per cent against all of the policyholders for the payment of the losses as finally adjusted, as well as certain expenses of the company in transacting business.   The defendant was a member of the company from June 9, 1898, until November, 1898, and his objection to the assessment was that it included losses in 1898 incurred when he was not a member.   With these facts in mind, it can be seen that the doctrine of the *Davis Case* is in no way disturbed by that announced in the *Gilman Case,* and that the doctrine of the *Gilman Case* neither helps respondent nor reaches the difficulty with which we are here faced.   Had the assessment under examination here been so made as to make the policyholders who were members for any given year responsible only for the losses sustained during that year, it would clearly have been valid under the doctrine of the *Gilman Case*.   The objection to the assessment here is that it makes the policyholders of one year liable for losses incurred in a year during which they were not members, and that this is contrary to the

contract of insurance as well as being inequitable and unfair in view of the variations of loss in the different years. We are compelled to conclude that, in theory at least, appellants' position is sound. However, the liquidation of a company such as this involves a great many intricate problems, and the effort of courts must be in the direction of a fair and practical solution of the difficulties presented, even though such a solution fails in some respects to reach a theoretically perfect result.

In *Stoddard v. Manzella,* 123 Misc. 672, 673, 206 N. Y. Supp. 140, the court said:

"With the situation existing of daily additions and withdrawals of members and policyholders, it is a practical impossibility to measure with precise exactitude the liability of each member for losses and expenses incurred. All that is essential to make the assessment a valid one is that it be based upon a fair method of calculation and be substantially correct."

In *Fishback v. Bothell Bus Co.* 150 Wash. 49, 56, 272 Pac. 67, the court said:

"The testimony in this case shows, without any contradiction whatever, that a vast amount of time has been necessarily spent by the department, with all its knowledge and experience in such matters, in working the matter out on the plan adopted. It also further shows that, while the technical plan suggested by appellant of a day to day period, rather than monthly periods, where there are altogether thousands of outstanding policies, dating from noon on the day of executing the policy, and the consequent necessity of ascertaining whether a given loss occurred before or after noon would be an almost limitless task, necessitating an expense nearly thirty times the cost of the present plan, which in this case would equal or exceed the outstanding liabilities and hence would be unreasonable and impractical."

In *Lincoln Bus Co. v. Jersey Mut. Casualty Ins. Co.* 112 N. J. Eq. 538, 542, 165 Atl. 112, the court said:

"The receiver's proposed assessment is for losses by calendar years. It is objected that, as each policyholder is liable

only for losses occurring during the life of his policy . . . it is inequitable to levy for losses during a period of the calendar year when he was not a member. The policy years of the 2,400 policies overlapped. There were daily additions and withdrawals. Over 700 claims have been filed with the receiver; several hundred claims are in litigation, and others may yet be instituted. The accounting work in connection with the preparation of this assessment is a volume of many pounds and represents an investment of probably $10,000. If the objectors' assessment theory be adopted with respect to every loss which has been sustained, the amount realized from the assessment will not be sufficient to. pay for the accounting services required to levy the assessment. In an assessment as we have here, such an exactitude would defeat assessment. It is sufficient, if the assessment is based upon a fair method of calculation, is equally applied, and is substantially correct. If a policyholder suffers by a charge of liability for part of his calendar year, before or after his membership, compensation is to be found in relief from liability for losses sustained during the life of his policy in the overlap of his calendar year."

The statement from the *Lincoln Case* was with respect to assessments upon a policy obligating a policyholder to pay such assessments as might be levied by the company "on account of losses and expenses incurred while he was a member."

It is apparent from these cases that concessions must be made to the practical necessities of the situation, and the question here is whether the concessions are greater than the necessities. The first question is whether the record discloses that, without such an expense of accounting as to make it impractical, the expenses of the company for the six years in question could be broken down, the losses incurred segregated to each year, and the annual deficiency for each year established. In this connection there is in evidence an exhibit purporting to set forth the loss ratios for each of the policy years here involved. This exhibit discloses in one column the cash premiums of each year, and in another the

expense ratio allocable to the year in question. By expense ratio is evidently meant those expenses which in the ordinary course of business were incurred in carrying on the workmen's compensation branch of the company's insurance activities. It does not, of course, include or refer to expenses of liquidation. The testimony of the actuary is to the effect that the exhibit in question shows losses sustained in the years involved. However, the column disclosing information concerning the losses is labeled, "Losses Paid," and does not intimate that the losses listed were incurred during the year in which they were listed. In fact, the exhibit *prima facie* indicates that the losses referred to consisted of cash paid during the year in question upon claims maturing during that year. This is confirmed by the fact that, as a matter of practice, the company did pay out its cash receipts upon claims as they matured without regard to the year in which the loss was established by order of the commission or judgment of the court. Having in mind the apparent tendencies of the exhibit, as well as the testimony of the actuary, the natural conclusion is that this exhibit establishes the annual cash deficit when the loss paid and the expense of doing business are considered in connection with cash receipts for a particular year. Such evidence is not helpful in establishing the incurred losses applicable to a particular year. We discover no other evidence in the record which would furnish a basis for making such an allocation as appellants demand. We are in a position to take judicial notice of the difficulties surrounding a completely accurate allocation of the incurred losses to the years in which they were incurred. The difficulties in the liquidation of this particular form of mutual insurance company are, of course, much greater than any other that we have in mind for the reason that so many of the claims against the company are payable in instalments and paid with current cash. It seems evident that a break-

down which will accurately segregate into years the incurred losses will be attended with very great difficulty. Whether it would have been practical to do this at the outset of this liquidation we do not find it necessary to determine. We pass the matter by simply stating that it would evidently be difficult, and that it is not shown in this case that it would have been practical. We say no more upon this because of the fact that we are not dealing with the first assessment but with the second. The first assessment was levied upon precisely the same basis as was this. Had the same objection been made then as is made here, it may very well be that this court might have been compelled to sustain it. At least, a showing could have been made that would start the liquidation off upon the right principle if the company's books and the whole situation was in such shape as to make this practical. No objection was made, however, and no party is in a position to raise any question concerning the first assessment. In this connection it may very well be that the impracticality of every method of procedure other than that adopted was conceded or established. The first assessment has been nearly collected, so far as collectible, and its proceeds applied to claims without regard to the year in which they were incurred. It may well be, in view of the instalment method of discharging incurred losses on workmen's compensation policies, that a liberal portion of the claims now outstanding are for losses incurred in the later years. To now open up the assessment and change the whole basis upon which it is levied would, it seems to us, require a re-examination of the whole basis of the first assessment and a readjustment that would make the second assessment equitable, in view of the basis for the first assessment. We are very clear that this would offer insuperable difficulties to the economical disposition of the affairs of the company, and there is nothing in the record to show that such a procedure, even if possible

to accomplish, would achieve such improved results from an equitable standpoint as to warrant the added expense of the procedure.

We are not informed as to how many of the policyholders were policyholders during the whole period, or, in fact, what the status of any of the appellants is in this respect. It is evident that if a large majority did hold policies during this whole period, very little change would result from the new method suggested. We conclude, (1) that it has not been shown that it would be practical to achieve the theoretically preferable result for which appellant contends, and (2) that, in view of the fact that the first assessment has been made and collected, it is now impractical to make the adjustments prayed for.

The final contention is that the assessment is inequitable for the reason that it failed to take into account the fact that the 1932 policyholders had not been assessed upon the first assessment. Upon the first assessment the 1932 policyholders were not assessed because of the supposition that a reinsurance contract, heretofore referred to, with the Security Mutual Casualty Company would bring into the liquidation fund approximately $90,000, and that there would be no loss properly allocable to the 1932 policyholders. The expectations with respect to the year 1932 did not materialize, and for that reason 1932 policyholders were included in the second assessment. No attempt, however, was made to adjust or in any way take into account in the second assessment the fact that these policyholders had not been assessed in the first assessment or that a portion of the proceeds of the first assessment had been applied to claims incurred in 1932. This is claimed to be inequitable for the reason that the 1932 policyholders will escape with a single twenty per cent assessment, whereas other policyholders will have responded to two assessments. In so far as the first

assessment is concerned, of course, nobody is in a position to complain, and, indeed, there appears to have been nothing of which to complain. It seems, however, to be only fair and equitable that the second assessment take into account the burden escaped by the 1932 policyholders in the first assessment, and that an added twenty per cent to equalize this burden should now be imposed upon the 1932 policyholders.

*By the Court.*—The order appealed from is modified as indicated in the opinion, and, as so modified, is affirmed. Respondent to have costs in this court.

FAIRCHILD, J., dissents.

The following memorandum was filed December 6, 1938:

WICKHEM, J. (*on motion for rehearing*). A motion for rehearing having been filed, the parties to this action have stipulated that the mandate herein be amended in order to make clear that the total assessment of $495,589.19 shall not be increased, but that the second assessment be so adjusted as to take into account the burden escaped by the 1932 policyholders in the first assessment. Since the mandate decrees that the order appealed from be modified as indicated in the opinion, the mandate is derived from the opinion itself. Therefore, it is necessary, in order to clarify the mandate, that the last sentence of the opinion be withdrawn and the following be substituted therefor:

"It seems, however, to be only fair and equitable that the second assessment take into account the burden escaped by the 1932 policyholders in the first assessment, and that an added twenty per cent assessment should now be imposed upon the 1932 policyholders to equalize this burden, and that the total amount of the assessments allowed by the circuit court for Dane county on the second assessment shall be apportioned by making an assessment of twenty per cent

on the workmen's compensation policyholders for the years 1932, and that the remainder of said second assessment shall be apportioned among all workmen's compensation holders for the years 1926 to 1932, both inclusive, on an equal percentage basis of eighteen and two-tenths per cent."

It is ordered that the opinion and mandate be so modified and amended.

The motion for rehearing having been made in order to hold the record in this court for the purpose of clarifying the mandate and having served this purpose, it is denied without costs.