IN RE LIQUIDATION OF WISCONSIN MUTUAL INSURANCE COMPANY: STURM and others, Appellants, vs. DUEL, Commissioner of Insurance, Respondent.*

*September 18—November 10, 1942.*

---

* Motion for rehearing denied, with $25 costs, on December 29, 1942.

400

For the appellants there were briefs by *Austin H. Forkner,* attorney, and *Rieser & Mathys* of counsel, all of Madison, and oral argument by *Mr. Robert M. Rieser* and *Mr. Forkner.*

For the respondent there was a brief by *Stroud, Stebbins & Wingert* of Madison, and oral argument by *E. L. Wingert* and *Byron H. Stebbins.*

A brief *amicus curiæ* was filed by *Wilkie, Toebaas, Hart, Kraege & Jackman* of Madison.

ROSENBERRY, C. J.   We shall take up consideration of the questions for decision in the order in which they are presented in briefs of counsel.

The first contention made is that the assessment is unlawful because it is horizontal.   This contention is based upon the decision in *Davis v. Parcher & J. & A. Stewart Co.* (1892) 82 Wis. 488, 498, 52 N. W. 771.   That was an insolvency and winding-up action of a mutual insurance company.   The company had issued policies.   In some instances the policyholders paid a cash premium, in other instances, policyholders signed a so-called premium note, some of which at the time of the insolvency proceeding had been paid in part.   An assessment was levied on the face of each note.   The court said:

"It also appears that eighty per cent of some of the notes had been paid, while only twenty per cent had been paid of other notes.   While the court refused to require any member to pay more than the face of his note, yet those that had paid sixty per cent or more were required to pay their notes in full, while others might escape by paying sixty per cent thereof.   This is grossly unequal and unjust and, in the absence of any statute or contract authorizing it, cannot be upheld."

It also appears that the assessment was levied without regard to whether it was or was not a just proportion of the losses and expenses which occurred during the life of each policy, and hence properly chargeable to the maker of the note, and also without regard to the amount which had been paid on such note.   This was denominated a horizontal assessment.

The situation in this case is not parallel to that in the case of *Davis v. Parcher & J. & A. Stewart Co., supra.*   By the order of the court the commissioner was directed to compute the respective amount of assessments against policyholders

and members pursuant to the terms and conditions and upon the basis outlined in the order, and to maintain books and records in such manner as to allocate as far as reasonably practicable each assessment collected from any policyholder to the time such policyholder was a member of the company. So that the assessment in this case does not contemplate a disposition of the proceeds collected without regard to the rights and equities of each policyholder. In this case the sum to be collected is equal to one hundred per cent of the premiums earned during said period of time on the policy of insurance issued to members and policyholders. The vice of the assessment levied on the premium notes in *Davis v. Parcher & J. & A. Stewart Co., supra,* is not present in this case, and while it may be true that some policyholders will be called upon to pay an assessment greater than the amount for which they will be ultimately found liable, provision is made for refund of such excess to the policyholders. It appears that the liabilities and obligations of the company were approximately $189,000; that the assessment on policyholders will aggregate $491,000. If all policyholders were solvent and collectible, the assessment would of course produce a very large excess. However, Mr. Yaudes, in charge of the liquidation, testified that there was not a possibility of collecting the full $491,000. He estimated that collections for the last two policy years would probably run forty to forty-five per cent; that the collectibility of assessments upon policyholders sold in 1937–1938, would probably be between twenty and twenty-five per cent. If the liquidator realizes forty per cent of a one hundred per cent assessment it would amount to approximately $190,-000. The contention of appellants is that this assessment should not be levied for the full amount; that the court had no right to take into consideration the fact that a considerable percentage of the assessments would be uncollectible. These contentions cannot be sustained. If the position of appellant was sustained and applied literally and logically it would re-

quire the liquidator to proceed, (1) on the theory that all policyholders against whom assessments were to be levied were solvent and collectible; on that assumption an assessment would be levied sufficient to meet the liabilities. When experience had proved that all of the assessments were not collectible, then a new assessment would be levied in order to make up the deficit upon the assumption that that part of the policyholders were still solvent and collectible. Eventually if this process were proceeded with, either the liabilities of the company would be fully discharged or those policyholders who were solvent would have paid in one hundred per cent of their liability. This matter was under consideration in *In re Builders Mut. Casualty Co.* (1938) 229 Wis. 365, 282 N. W. 44, 282 N. W. 504. After citing cases, the court said (p. 381):

"It is apparent from these cases that concessions must be made to the practical necessities of the situation, and the question here is whether the concessions are greater than the necessities. The first question is whether the record discloses that, without such an expense of accounting as to make it impractical, the expenses of the company for the six years in question could be broken down, the losses incurred segregated to each year, and the annual deficiency for each year established."

The only evidence offered and received in this case indicates that no more will be realized from the one hundred per cent assessment than is necessary to discharge the obligations of the company and pay the necessary expenses incurred. To require the liquidator to proceed, step by step, thereby materially increasing the expenses and delaying the final completion of the liquidation would be beneficial neither to the policyholders nor creditors. No matter what procedure is adopted in a liquidation proceeding such as this the utmost that can be attained is a result which approximates an equitable distribution of burdens and benefits. See *In re Builders Mut. Casualty Co., supra; Seamans v. Millers' Mutual Ins. Co.*

(1895) 90 Wis. 490, 63 N. W. 1059; *Davis v. Shearer* (1895), 90 Wis. 250, 62 N. W. 1050.

Appellants contend that the assessment was levied in violation of the provisions of sec. 201.02 (3), Stats., which is as follows:

"Persons associating to form a mutual insurance company shall subscribe articles of incorporation which shall contain: . . .

"(d) The condition of membership which shall provide that each policyholder have one vote and shall be liable for a *pro rata* share of losses and expenses incurred during the time the policyholder has been a member of the company, unless the liability of all members is limited according to law."

This language was introduced into the statute by ch. 216, Laws of 1935. The Wisconsin Mutual Insurance Company was organized in 1934 and prior to the enactment of this regulation. It therefore had no application to the articles of incorporation of the company. The company was organized under the 1933 statutes. Sec. 201.02 (5), Stats. 1933, provided:

"The articles of a mutual insurance company may limit (but to he effective the limitation must be expressed in every policy) : . . . (c) the liability of members, which liability shall be a specified number of times the annual premium."

The policy issued by the defendant company contained the following:

"The contingent liability of the assured under this policy is limited to an amount equal, and in addition, to the annual premium stated in the policy."

Under the articles of organization, the statute, and the policy it is clear that the liability of a policyholder was limited to one hundred per cent of the annual premium.

It is further argued that the assessment is invalid under the provisions of sec. 201.02 (3), Stats., because not made

upon a *pro rata* basis, and that such an assessment cannot be made unless and until the liabilities are accurately ascertained. It is clear under the decisions that a liquidator with the approval of the court may proceed on the basis of estimates. *Davis v. Shearer, supra; Davis v. Parcher & J. & A. Stewart Co., supra; Seamans v. Millers' Mutual Ins. Co., supra.* In *In re Builders Mut. Casualty Co., supra,* it was said (p. 372) :

"An assessment is properly levied if it be presently necessary, provided it be based on a fair method of calculation, is equally applied, and is substantially correct."

It appears from the evidence in this case reasonably certain that one hundred per cent assessment will not produce a fund sufficient to discharge the liabilities of the company. This conclusion is based upon the experience of the liquidator and the insurance department in prior liquidation proceedings and is not a mere arbitrary conclusion reached by the liquidator. The liquidator is ordered to keep his books and records in such manner as to allocate as far as reasonably applicable each assessment collected from such policyholder to the time such policyholder was a member of the company. This can only be for the purpose of applying these funds *pro rata.* It cannot be expected that the court in the order directing the assessment can anticipate and provide for all future contingencies, nor is there any feasible way of ascertaining in advance any policyholder's precise ultimate liability for any particular period, that can be accurately ascertained only after collections have been made and the amount available fixed.

Appellants contend that the assessment cannot be *pro rated* unless the liabilities are accurately ascertained. That the liquidator with the approval of the court may proceed on the basis of the estimates is well established by prior decisions of this court. *Davis v. Shearer, supra; Davis v. Parcher & J. & A. Stewart Co., supra; Seamans v. Millers' Mutual Ins. Co.,*

*supra.* Reduced to its lowest terms, the claim of appellants on this branch of the case is that the assessment is invalid because in some instances it may ultimately appear that a larger amount was collected from some policyholders than they were liable for. While that seems quite improbable under the circumstances of this case, in spite of the demonstration sought to be made by appellants' counsel, even if it is, it is counterbalanced by the fact that to proceed, step by step, with successive assessments would be destructive of the entire purpose of the liquidation proceeding. The contingent liability of policyholders is imposed for the purpose of taking care of the creditors of the company, and while it is true that under the statute policyholders cannot be assessed for more than they are liable, the mere fact that it may be necessary in the course of the liquidation proceedings after the calculations are all made with such accuracy as is attainable that some policyholder is entitled to a refund, does not invalidate the assessment. The estimate of the amount necessary to liquidate claims against the company is fair and reasonable. As we have already pointed out, the court in making the assessment was justified in taking into account the fact that a considerable percentage of the assessments made would be uncollectible and to make provision therefor. In this case it seems quite apparent that the full liability imposed upon policyholders will not discharge the claims of creditors and pay the expenses of liquidation. If the liquidation process is further obstructed and delayed, it is quite probable that the shrinkage will be even greater than the trial court anticipated due to the changing economic conditions. Practically all of the contentions made here are answered in the negative by the cases heretofore decided and already cited in this opinion. While it was said in *In re Builders Mut. Casualty Co., supra* (p. 383), that if the objection there revealed against the second assessment had been made against the first assessment that "it may

very well be that this court might have been compelled to sustain it." The court also said:

"In this connection it may very well be that the impracticality of every method of procedure other than that adopted was conceded or established."

In liquidation proceedings such as this the precise procedure to be followed is largely within the discretion of the trial court. In order to achieve anything approximating a just result, the procedure must be flexible enough so as to be adaptable to the exigencies of each case. The fact that one method is adopted in one case cannot be made the basis of an implication that all other procedures are invalid. The discussion in the cases must be read in connection with the facts in the case being dealt with.

Appellants also claim that by the order dated December 23, 1938, in a former liquidation proceeding, the court determined that the company was solvent and that this determination operated to discharge policyholders' liability up to the date of the order. This contention requires us to consider the nature of the proceedings had leading up to the order of December 23, 1938. On November 19, 1938, the commissioner of insurance took possession of the company because of its insolvency and mismanagement. On December 13, 1938, the commissioner petitioned the court and set forth certain proposals that had been made to restore the capital of the company; that certain persons were to furnish $35,000 capital, consisting of $6,020 cash and bonds of the market value of $28,980, face value $41,000. The proposal was subject to two conditions: (1) That if on or before March 1, 1939, the commissioner finds the company solvent, the bonds were to be returned; (2) that if on or before March 1, 1939, said persons shall elect to withdraw the proposal then they shall have returned to them the bonds. After three hearings the court made the order in question. The court found that the

company was insolvent on the 19th day of November, 1938, and that it was insolvent on the day of the date of the order;—

"that on the program presented by the petition of said insurance commissioner, said Wisconsin Mutual Insurance Company can properly and safely resume possession . . . and conduct of its business."

The order appointed certain individuals directors of the company, directed the insurance commissioner to relinquish the management and control of the company, and that the management and control be given to the directors, and the directors were ordered to carry out the terms and conditions of the program.

The bonds subsequently proved to be worthless, the instrument securing them having been foreclosed and the property sold. We are unable to find anything in this order or in the proceeding leading up to it that amounts to a determination that the company was solvent, at any time after the 19th day of November, 1938. The company was merely given an opportunity to rehabilitate itself. This it did not succeed in doing. Appellants' contention cannot be sustained.

Appellants further contend that the failure of the company to obtain a license after May 1, 1940, made its contracts illegal, and it thereby became incapable of binding policyholders or enforcing assessments. The plaintiffs base their contention upon the provisions of sec. 201.41 (1), Stats., as follows:

"No insurance company shall transact insurance business in this state without first having paid the license fees and obtained the license therefor required by law."

Sec. 76.32, Stats., provides:

"Every corporation transacting the business of casualty or suretyship insurance shall pay to the state on or before the first day of March in each year, two per centum upon the gross premiums," etc.

The argument of appellants is that the language of sec. 201.41 (1), Stats., requires the company to procure a license; that it was required by sec. 76.32 to pay a tax upon its gross premiums, and for that reason is clearly within the provisions of sec. 201.41 (1).

The liquidator contends that under the plain wording of sec. 201.41 (1), Stats., only those companies which are required to pay license fees are required to obtain a license; that the Wisconsin Mutual Insurance Company was required to pay no fee and so not required to procure a license. The exemption is claimed under sec. 76.30 (2). Sub. (1) relates to fire and marine insurance companies. Sub. (2) is as follows:

"Excepting domestic mutual insurance companies included in section 76.34 [life insurance companies] and companies heretofore organized under sections 201.02 to 201.19, inclusive, no domestic mutual insurance company shall be required to pay any taxes, fees, or charges to the state."

The appellants dismiss this contention with the observation that by its terms sec. 76.30, Stats., applies only to fire and marine insurance companies.

Sec. 201.01 (1), Stats., provides:

"In statutes relating to insurance, unless the context indicates otherwise, 'company' includes all corporations, associations, partnerships, and individuals engaged as principals in the business of insurance, except mutual benefit societies."

Therefore by statutory declaration the Wisconsin Mutual Insurance Company was included within the terms of sec. 76.30 (2), Stats., although sub. (1) specifically refers to fire and marine insurance companies. The liquidator cites *Northwestern Nat. Ins. Co. v. Freedy* (1930), 201 Wis. 51, 55, 227 N. W. 952, as authority for his position. In that case the court said:

"We do not find any statute requiring a domestic insurance corporation to have a license to do the business in the state

authorized by its charter or articles of incorporation. The licensing statutes apply only to foreign insurance companies seeking to do business in this state. Sec. 201.40, Stats. Such licenses may be revoked by the insurance commissioner for failure to comply with the law, sec. 201.41, Stats., but such statutes do not apply to appellant, a domestic corporation."

Counsel for appellants characterize this as "a wholly gratuitous statement entirely immaterial to the decision" and "patently erroneous." This characterization seems to be unnecessarily severe, and the controversy in this case seems to have generated more heat than necessary.

The provisions of sec. 76.30 (2), Stats., and sec. 76.32 were in force when the Wisconsin Mutual Insurance Company was organized in 1934. They seem to be in conflict. A history of the sections shows that they do not conflict. What is now sec. 76.30 (2) was created by ch. 290, Laws of 1909, and was denominated sec. 1219, 2 and in its original form read:

"Excepting domestic mutual insurance companies included in section 1220 or 1220a and companies heretofore organized under sections 1896 to 1900, inclusive, no domestic mutual insurance company shall be required to pay any taxes, fees, or charges to the state by reason of this or any other section of the statutes now in force or hereafter enacted unless the same shall, by specific reference to this section, expressly include such company."

The act was published June 5, 1909.

Sec. 76.32, Stats., which imposes a tax upon every corporation transacting the business of casualty or suretyship insurance, was created by ch. 460, Laws of 1909, which was published June 19, 1909, two weeks after the publication of ch. 290.

By ch. 768 (sec. 37), Laws of 1913 (a revisor's bill), sec. 1219, 2 was renumbered sec. 51.323, 2 and amended to read:

"Excepting domestic mutual insurance companies included in section 51.32 and companies heretofore organized under

sections 1896 to 1900, inclusive, no domestic mutual insurance company shall be required to pay any taxes. . . ."

While that part of the subsection which provided that no mutual insurance company should be required to pay any taxes under this or any other section of the statutes except by a specific reference to the section was dropped out and does not subsequently appear, it did not change the law as it then stood, no intent to change being either expressed or present by necessary implication. *London G. & A. Co. v. Wisconsin P. S. Corp.* (1938) 228 Wis. 441, 279 N. W. 76.

Ch. 460, Laws of 1909, having been enacted by the same legislature which enacted ch. 290, the two enactments being separated by a period of only two weeks, the legislature could not have intended by the enactment of ch. 460 to impose a tax upon mutual insurance companies exempted by ch. 290. That such was not their intent seems clear from the clause of ch. 290 already quoted. It follows therefore that mutual companies not within the exceptions stated in sec. 76.30 (2), Stats., are not subject to the payment of taxes or license fees and not required to procure a license under sec. 201.41, and the court correctly so held in *Northwestern Nat. Ins. Co. v. Freedy, supra.*

The company therefore was not required to have a license and its failure to procure one did not affect its contract.

The orders appealed from which denied the motions made by appellants to set aside the order of November 29, 1941, should be affirmed. That order being here upon the merits and being affirmed by this court, no further consideration need be given to the orders of May 26, 1942.

As the trial court held "no cause has been shown warranting relief on the ground of mistake, inadvertence, surprise or excusable neglect."

Complaint is made that in the making of the assessment no account was taken of the fact that there were two classes of policyholders; that the failure to make separate assessment

for losses and expenses relating to the liability insurance business as distinct from the automobile insurance business was erroneous. Be that as it may, so far as the record discloses the liability insurance department is the more solvent of the two, and it does not appear that any liability policyholder is complaining. Certainly the automobile insurance policyholder is not aggrieved and therefore is in no position to complain. In any event, it appears that there is a loss in each department and that both classes of policyholders are liable to an assessment. The total premiums on all public liability amounted to only $9,581.09. If it should appear that the order should be modified as to public-liability policyholders it should not be set aside.

Appellants further claim that the assessment is invalid because made on the basis of the earned premium. It is said that the policies in each case restrict contingent liability to an amount equal to the annual premium. This contention confuses "liability" with "assessment." Sec. 201.02 (5), Stats., relates to classification and limitation of liability. Power to levy assessments is conferred by sec. 200.09 referring to sec. 220.08. Assessment on the basis of earned premium is much more equitable as well as more favorable to the policyholder than an assessment upon the basis of annual income. Assessment on the earned-premium basis was sustained in *In re Builders Mut. Casualty Co., supra.* It is manifest that an assessment upon an annual-premium basis, whether or not the premium was earned, would not be on *pro rata* basis. A member who had been insured for one month might be liable to the same assessment as if he had been a member for a year.

Some fear has been expressed that if it should later appear that policyholders have been assessed more than their just proportion, the funds will be paid into the hands of the liquidator and paid out indiscriminately without proper allocation. Certainly the order made by the court looks to the allocation of funds upon a just and equitable basis. Allocation would

only be effective if there were funds out of which it might be made. If the order is not sufficiently definite as to segregation, allocation, and distribution of funds, that is a matter for the consideration of the trial court. If such a situation exists, no doubt upon proper application and a proper showing the court will make such order as is necessary to make its order fully effective.

*By the Court.*—The orders appealed from are affirmed.